**CHEMICAL BANK, European American Bank, Banque Paribas, American Express Bank Ltd., NatWest Bank National Association and Rabobank Nederland, Plaintiffs–Appellees,**

v.

**AFFILIATED FM INSURANCE CO., Defendant–Appellant,**

**Andina Coffee, Inc. and Andina Trading Corp., Consolidated Plaintiffs–Appellees,**

Lloyd's Syndicate No. 446, Lloyd's Syndicate No. 418, Lloyd's Syndicate No. 406, Lloyd's Syndicate No. 40, Lloyd's Syndicate No. 367, Lloyd's Syndicate No. 34, Lloyd's Syndicate No. 334, Lloyd's Syndicate No. 321, Lloyd's Syndicate No. 309, Lloyd's Syndicate No. 304, Lloyd's Syndicate No. 162, Lloyd's Syndicate No. 123, Lloyd's Syndicate No. 108, Lloyd's Syndicate No. 1014, Lloyd's Syndicate No. 52, Insurance Company of North America, Home Insurance Company, Phoenix Assurances Public Limited Company, Cornhill Insurance PLC., Commercial Assurance Co. PLC, River Thames Insurance Co. Ltd., Sovereign Marine & Gen. Ins. Co., Assicurazioni Generali S.P.A., Lloyd's Syndicate No. 447, Phoenix

374

"L" Account, Norwich Union Fire Insurance Society Ltd., Northern Assurance Company Limited, Lloyd's Syndicate No. 202, Lloyd's Syndicate No. 745, Lloyd's Syndicate No. 735, Lloyd's Syndicate No. 725, Lloyd's Syndicate No. 697, London & Hull Maritime Insurance Company Limited, Lloyd's Syndicate No. 843, Lloyd's Syndicate No. 65, Lloyd's Syndicate No. 831, Lloyd's Syndicate No. 803, Lloyd's Syndicate No. 80, Lloyd's Syndicate No. 633, Lloyd's Syndicate No. 483, Lloyd's Syndicate No. 455, Lloyd's Syndicate No. 625, Lloyd's Syndicate No. 62, Lloyd's Syndicate No. 575, Lloyd's Syndicate No. 535 and Lloyd's Syndicate No. 448, Defendants.

No. 97–7982.

United States Court of Appeals, Second Circuit.

Petition for Rehearing Filed: March 26, 1999.

Decided: Nov. 8, 1999.

Henry L. Goodman, Morgan Lewis & Bockius LLP, New York, New York; David G. Keyko, Winthrop, Stimson, Putnam & Roberts, New York, New York; Robert S. Fischler, Winston & Strawn, New York, New York, for Plaintiffs–Appellees Chemical Bank, American Express Bank Ltd., and NatWest Bank National Association.

John M. Toriello (Glenn J. Winuk, Joshua J. Albert, Haight, Gardner, Holland & Knight, Henry P. Monaghan, of counsel), New York, New York, for Plaintiffs–Ap-

pellees Banque Paribas, Radobank Nederland, and European American Bank.

Lloyd D. Feld, Armonk, New York, for Consolidated Plaintiffs–Appellees.

Daniel P. Levitt, New York, New York (Franklin M. Sachs, H. Richard Chattman, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, Newark, New Jersey, of counsel), for Defendant–Appellant.

Stanley N. Futterman, New York, New York; Craig A. Berrington, Phillip L. Schwartz, Washington, D.C., for Amicus Curiae American Insurance Association.

Bruce E. Clark, Sullivan & Cromwell, New York, New York (H. Rodgin Cohen, Jay L. Pomerantz, of counsel), for Amici Curiae New York Clearing House Association L.L.C., Bankers Roundtable, Commercial Finance Association, and Institute of International Bankers.

Before: WINTER, Chief Judge, CARDAMONE, Circuit Judge, and CARMAN,* Chief Judge.

WINTER, Chief Judge.

Appellees have petitioned this panel for rehearing to reconsider its decision in *Chemical Bank v. Affiliated FM Ins. Co.,* 169 F.3d 121 (2d Cir.1999). Pursuant to our request, appellant submitted a response. *See* Fed. R.App. P. 40(a)(3).

We assume familiarity with, and adopt the defined terms from, our earlier decision. Appellees seek reconsideration of (i) whether the Banks ratified T & N's unauthorized decision to cancel the Affiliated Policy, and (ii) whether the April Agreement affects the scope or period of the Affiliated Policy. We deny the petition on the first ground, grant it on the second, and hold that the Affiliated Policy's "other insurance clause" renders Affiliated liable to appellees for all losses due to payments made on fraudulent bills of lading before February 25, 1986. Accordingly, we va-

cate our earlier disposition of this appeal, affirm the district court's judgment as to Andina, vacate it as to the Banks, and remand the case with instructions to enter judgment for the Banks in the amount of their respective FBOL losses incurred before February 25, 1986.

Regarding the first argument, our earlier decision held that the Affiliated Policy was effectively terminated as to the Banks on February 25, 1986 because the Banks ratified T & N's termination of that policy. *See Chemical Bank,* 169 F.3d at 128–29. In their petitions for rehearing, the Banks describe our holding as establishing a "dangerous rule" that deprives them of their contractual right to 10 days' notice prior to cancellation and allows insurance brokers to enter into unauthorized agreements on behalf of uninformed lenders. This argument entirely misstates our decision.

■■■ Our decision did not hold that T & N or Affiliated had actual or apparent authority to terminate the Affiliated Policy. Rather, we expressly relied upon a "narrower" ground, namely that, on the particular facts of this case, the Banks ratified the February 25, 1986 termination of the Banks' coverage under the Affiliated Policy. *Id.* at 128. Although a ratified act is given effect as if originally authorized, the doctrine of ratification is in no way implicated where an agent acts with authority, actual or apparent. *See Holm v. C.M.P. Sheet Metal, Inc.,* 89 A.D.2d 229, 455 N.Y.S.2d 429, 432 (1982) ("Ratification is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority.... Ratification relates back [to] and supplies original authority ...."); *see also Leviten v. Bickley, Mandeville & Wimple, Inc.,* 35 F.2d 825, 827 (2d Cir.1929) ("Ratification [is] the subsequent adoption and affirmance by one person of an act which another, without authority, has previously

*The Honorable Gregory W. Carman, Chief Judge of the United States Court of Interna-

tional Trade, sitting by designation.

assumed to do for him while purporting to act as his agent."); *Restatement (Second) of Agency* § 82 cmt. b (1958) ("Ratification is not a form of authorization, but ... upon ratification the consequences of the original transaction are the same as if it had been authorized ...."); Harold Gill Reuschlein & William A. Gregory, *The Law of Agency & Partnership* § 27, at 72 (2d ed. 1990) ("[Ratification] is the affirmance of an act done originally without authority.").

Accordingly, by resting our decision on ratification grounds, we held neither that an insurance broker's unauthorized act of entering into an agreement on a lender's behalf is valid absent the lender's ratification nor that the Banks here lacked a contractual right to 10 days' notice. To the contrary, we held only that the Banks had to assert that right instead of remaining silent for years after receiving the termination notice and after expressly alleging in their state court complaints against T & N that the Affiliated Policy was validly terminated on February 25, 1986. We therefore deny the Banks' petitions insofar as they seek reconsideration of the effective termination date of their coverage.

We are persuaded, however, by appellees' second argument, namely that the April Agreement neither narrowed the scope nor shortened the period of the Affiliated Policy. In our original decision, we held that T & N had apparent authority to enter into the April Agreement on the Banks' behalf and that the April Agreement allocated losses among the London insurers and Affiliated, with the result that Affiliated was not liable to appellees for certain FBOL losses incurred prior to the termination date of the Affiliated Policy, February 25, 1986. *See Chemical Bank,* 169 F.3d at 129–30. We now vacate that portion of our original decision and hold that the Affiliated Policy covered the Banks and Andina for the losses in question.

Although our prior decision noted that no endorsement corresponding to the April Agreement was added to the Affiliated Policy, we failed to note, or at least perceive the implications of, the fact that the April Agreement did not even purport to narrow the coverage of the Affiliated Policy. Moreover, the Affiliated Policy's so-called "overlap clause" provides that "in case of any insurance upon the said interest subsequent in date to this Policy, [Affiliated] shall nevertheless be answerable for the full extent of the sum insured by [it] ...."

■ The parties dispute whether the April Agreement covers FBOL losses incurred on certain non-existent shipments purportedly made within Colombia before February 25, 1986, but even if it does, its failure even to purport to amend the Affiliated Policy renders it at best "insurance upon" a risk covered by that Policy taken out "subsequent" to the date of the Policy. Under the express terms of the overlap clause, Affiliated is fully liable for covered losses even if a later insurer—here, for the sake of argument, the London insurers—has covered the same losses. Thus, Affiliated is liable to the Banks and Andina for all FBOL losses incurred before February 25, 1986, the effective termination date of the Affiliated Policy.

In its opinion, the district court held that the Affiliated Policy was terminated as to Andina on February 25, 1986 and that Affiliated was liable to Andina for all FBOL losses incurred before that date. *See Chemical Bank v. Affiliated FM Ins. Co.,* 970 F.Supp. 306, 330–31 (S.D.N.Y. 1997). Accordingly, the district court restricted its finding on Andina's damages to payments made on FBOLs before February 25, 1986, and entered a judgment for Andina in the amount of $2,975,000, plus pre-judgment interest, reflecting that finding. *See id.* at 324 (finding 47), 332. Because we agree with the district court that the Affiliated Policy covered Andina's FBOL losses incurred before February 25, 1986 and find no error in the district

court's damages award, we affirm the judgment for Andina.

As to the Banks, however, the district court held that their coverage under the Affiliated Policy did not terminate until March 21, 1986. *See id.* at 330. Accordingly, the court calculated each Bank's damages on the basis of FBOL losses incurred before March 21, 1986, without separately setting forth damages for FBOL losses incurred before February 25, 1986. *See id.* at 324, 332. Given our ruling that the Banks are covered under the Affiliated Policy for payments made on FBOLs before February 25, 1986, but not afterwards, we remand to the district court to make findings as to each Bank's damages for FBOL losses incurred before February 25, 1986 and to enter a corresponding judgment for each Bank and against Affiliated.

We therefore vacate our original disposition of this appeal, affirm the judgment of the district court for Andina Coffee, Inc., vacate the judgment as to the Banks, and remand with instructions to the district court to (i) make findings as to each Bank's damages for FBOL losses incurred before February 25, 1986, and (ii) enter a corresponding judgment for each Bank against Affiliated.